IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2025 Session

## STATE OF TENNESSEE v. DEON LAMONTE YOUNG

**Appeal from the Criminal Court for Hamblen County**
**No. 23-CR-486     Alex E. Pearson, Judge**

_____

**No. E2025-00294-CCA-MR3-CD**

_____

Defendant, Deon Lamonte Young, was convicted of possession of a firearm after having been convicted of a violent felony, driving on a revoked or suspended license, driving with an open container, and failing to stop at a stop sign. The State filed notice of intent to seek enhanced punishment based on six of Defendant's prior felony convictions. The trial court imposed an effective twenty-five year sentence with eighty-five percent release eligibility as a Range III, persistent offender. On appeal, Defendant argues that the evidence was insufficient to support his conviction for possession of a firearm; that his sentence was excessive; and that the trial court committed plain error by "abrogat[ing] its duty to ensure a fair trial when it did not address whether [Defendant] intended to stipulate to his felony status, and failed to provide adequate instructions to the jury." However, because the appeal is untimely and the interest of justice does not require waiver of the timely filing of the notice of appeal, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Forrest L. Wallace, Knoxville, Tennessee (on appeal), and Ethel Rhodes, Morristown, Tennessee (at trial), for the appellant, Deon Lamonte Young.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General, and Ryan Dugan, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Kenneth Lovell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

*Trial*

Defendant's convictions stem from a traffic stop on May 20, 2023, by Sergeant Devin Cribley of the Morristown Police Department, in which Defendant failed to stop at a stop sign. He was the only occupant of the vehicle, which was owned by his girlfriend, Amy Knowlton. Sergeant Cribley smelled the "strong odor" of alcohol about Defendant's person, and Defendant told the officer that there was an open container of an alcoholic beverage in the center console.

When Sergeant Cribley asked Defendant for his driver's license, proof of insurance, and registration, Defendant told him to "just run it on the radio." Defendant also said that he did not have a driver's license because he had to "take a test in Dandridge." Sergeant Cribley then told Defendant that he needed the documents to scan, and Defendant turned the car off and hesitantly opened the glove box. Sergeant Cribley noted that it took Defendant two minutes to remove the key to the glove box from the key fob. He testified:

> As I'm - - prior to pulling him out of the car and I'm still trying to get these documents, [Defendant] leans over to the glove box in an unusual way and holds the glove box with two hands to prevent it from falling all the way open and I'm still asking him "I need those documents" and he would shut it back, pull out a document, open again really carefully with - - if I can explain to the court by showing, he would put one hand under the glove box and with the key to prevent it from falling all the way over. And then he done that I think three times before I eventually got the document that I was looking for and then I brought him out of the car.

Sergeant Cribley administered a field sobriety test to Defendant and obtained consent to search the vehicle for alcoholic beverages. During the search, Sergeant Cribley found a cup containing an alcoholic beverage in the center console, and in the glove box, he found a .45 caliber Taurus Long Colt revolver loaded with three spent casings and two live rounds. The gun concerned Sergeant Cribley because Defendant had said that he was a "gang stalk," which meant that Defendant needed protection from other gang members. Defendant claimed the gun belonged to his girlfriend. Sergeant Cribley placed Defendant in handcuffs due to an outstanding warrant from Jefferson County. His interactions with Defendant were captured on his body camera and the video and screenshots from the video were shown to the jury.

The State entered a certified copy of a judgment for Defendant's prior aggravated assault conviction.

Amy Knowlton testified that she owned the car Defendant was driving at the time of the offenses, and she had purchased the gun at the Golden Pawn Shop approximately fifteen years earlier. Ms. Knowlton claimed that she normally stored the gun in "a back closet" but placed it in the glove box of her car for protection because she had been to Virginia to "drop off a puppy" she had sold. She said she forgot to take the gun back into the house and forgot that it was still in the car when Defendant borrowed the car.

Based on this proof, the jury convicted Defendant of possession of a firearm after having been convicted of a violent felony, driving on a revoked or suspended license, driving with an open container, and failing to stop at a stop sign as charged in the indictment.

*Sentencing*

The presentence report, which was admitted without objection as an exhibit to the sentencing hearing, reflected that Defendant had eight prior felony convictions and five misdemeanor convictions consistent with the State's enhancement notice. Defendant did not contest any of the convictions, and the trial court found beyond a reasonable doubt that Defendant was a Range III persistent offender with a sentencing range of twenty to thirty years. The State noted that Defendant had a previous conviction for possession of a firearm after having been convicted of a felony.

Defense counsel pointed out that Defendant had been on bond in this case for seventeen and a half months and had not committed any other offenses. He had voluntarily completed a treatment program at Buffalo Valley and was attending online Alcoholics Anonymous meetings. He was also close to obtaining his driver's license. Defense counsel noted that Defendant lived in Knoxville, was breeding dogs, and had a very supportive "significant other" who "says she can get him on at Food City and she can keep and eye on him." Defense counsel asked the trial court to consider that Defendant's criminal conduct neither caused nor threatened serious bodily injury arguing that he "fixed a drink in the car" and "ran through a stop sign."

Defendant gave an allocution stating that he was in a "bad place" and on "all kinds of drugs" at the time of the offenses and that he "was wrong." He requested the trial court place him on probation and promised that he would "do every step to stay clean and stay positive and be a positive role model."

- 3 -

The trial court considered Defendant's prior criminal history and his attempts at rehabilitation while being released on bond for the present offenses. However, the court pointed out that Defendant was not eligible for probation because he faced a minimum sentence of twenty years for possession of a firearm after having been convicted of a violent felony. In considering the length of Defendant's sentence, the trial court found that because Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, enhancement factor one applied. *See* T.C.A. § 40-35-114(1).

The court also considered as a mitigating factor that while on bond, Defendant had "taken actions to better himself, so the court is not going to sentence him to the maximum because he has taken steps that in the court's mind are efforts to better himself." *See id.* § 40-35-113(13). After weighing the factors, the trial court imposed a midrange sentence of twenty-five years to be served at eighty-five percent in confinement. Judgment was entered November 22, 2024.

Defendant did not file a motion for new trial. On January 2, 2025, Defendant retained new counsel for appeal, and on January 6, 2025, Defendant filed a "Motion to Substitute Counsel and Notice of Entry of Appearance" which was granted by the trial court. On February 27, 2025, Defendant filed a motion in this court requesting a "waiver of the timeliness of his notice of appeal[.]" In his motion, Defendant asserted that original counsel discussed docketing the case for a new trial hearing, and the parties selected January 6, 2025, as the date for the hearing. Defendant further asserted that original counsel "did not move to withdraw, and [Defendant] understood that [original counsel] would continue representing him through the motion for new trial phase of the case." According to the motion, a new hearing date for a motion for new trial was set for March 10, 2025, and "no one addressed whether a motion for new trial had been filed and [counsel] mistakenly presumed that [original counsel] had filed a timely motion for new trial, pursuant to *Tenn. R. Crim. P. 33*, when in fact she had not." (Emphasis in original). Defendant further asserted that "[h]ad counsel realized this oversight, he would have filed the instant motion much sooner in time." On March 14, 2025, this court entered an order reserving Defendant's motion and directing the parties to address the request for delayed appeal along with any other substantive issues raised by Defendant.

**Analysis**

Defendant argues that the evidence was insufficient to support his conviction for possession of a firearm after having been convicted of a violent felony; that his sentence was excessive; and that the trial court committed plain error by "abrogat[ing] its duty to ensure a fair trial when it did not address whether [he] intended to stipulate to his felony status, and failed to provide adequate instructions to the jury." The State argues that we

- 4 -

should dismiss the appeal as untimely because the interests of justice do not merit a waiver of the timely filing requirement. *See* Tenn. R. App. P. 13(b). In the alternative, the State responds that the evidence was sufficient to sustain Defendant's conviction; that the trial court acted within its discretion by imposing a within-range sentence; and that the trial court did not commit plain error.

Initially, we must address the timeliness of the appeal. A notice of appeal must be filed "within [thirty] days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4(a). A timely filed motion for new trial will toll the time for filing a notice of appeal. Tenn. R. App. P. 4(c). Consequently, "an untimely motion for new trial also will result in an untimely notice of appeal." *State v. Rutherford*, No. E2019-00063-CCA-R3-CD, 2020 WL 587078, at *8 (Tenn. Crim. App. Feb. 5, 2020). Unlike the motion for new trial, the time for filing the notice of appeal to this court is not jurisdictional and may be waived in the "interest of justice." Tenn. R. App. P. 4(a); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989).

When considering whether a waiver on an untimely notice of appeal is appropriate, "this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Also relevant is whether there has been a request for waiver. *Id.* (considering the State's failure to seek waiver of its untimely notice of appeal in determining whether the interest of justice would favor waiver); *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *6 (Tenn. Crim. App. Nov. 9, 2023) (finding defendant's failure to seek waiver was a relevant factor that weighed against waiver), *perm. app. denied* (Tenn. May 16, 2024). The appealing party "bears the responsibility to properly perfect his [or her] appeal or to demonstrate that the 'interests of justice' merit waiver of an untimely filed notice of appeal." *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20, 2023), *perm. app. denied* (Tenn. June 7, 2023); Tenn. R. App. P. 4(a).

In this case, Defendant did not file a motion for new trial. The judgment was filed on November 22, 2024, and became final thirty days later on December 23, 2024.[1] Tenn. R. App. P. 4(c). Defendant's notice of appeal was not filed until February 27, 2025, sixty-six days later. While Defendant has acknowledged that his appeal was untimely, and filed a motion requesting that this court waive the timely filing requirement, we find his reasoning for waiver unpersuasive. In his motion, Defendant asserted in part that the case was docketed for a new trial hearing by original counsel on January 6, 2025. He further asserted that original counsel "did not move to withdraw," and he understood that she would continue representing him through the motion for new trial. According to the

---

[1] We note that December 22, 2024, was a Sunday.

motion, after counsel was retained, a new hearing date for a motion for new trial was set for March 10, 2025, and "no one addressed whether a motion for new trial had been filed and [counsel] mistakenly presumed that [original counsel] had filed a timely motion for new trial[.]" Defendant further asserted that "[h]ad counsel realized this oversight, he would have filed the instant motion much sooner in time."

While Defendant's motion avers that new counsel was not retained until after the expiration of both deadlines for filing a motion for new trial and filing notice of appeal, it does not address why original counsel did not file a motion for new trial or why Defendant did not file a *pro se* motion which could have later been amended by counsel. *See State v. Lowe-Kelley*, 380 S.W.3d 30, 34 (Tenn. 2012); Tenn. R. Crim. P. 33, Adv. comm. cmt. Defendant's argument that new counsel mistakenly presumed original counsel had filed a timely motion for new trial and that he would have filed the notice of appeal much sooner had he been aware no motion for new trial had been filed does not in the interest of justice support a waiver of the timely filing requirement of the notice of appeal. Defendant does not assert, and there is nothing in the record to show, that circumstances beyond his control prevented him from timely filing his notice of appeal. *State v. Strowder*, No. E2024-00537-CCA-R3-CD, 2025 WL 659273, at *4 (Tenn. Crim. App. Feb. 26, 2025), *perm. app. denied* (Tenn. June 20, 2025).

Additionally, after consideration of Defendant's sufficiency and sentencing issues and his plain error challenge as to the method by which the State proved his status as a convicted felon, and after a thorough review of the record, we conclude that the issues are substantially without merit. The issues are "considered under highly deferential standards of appellate review or involve discretionary decisions by the trial court that are reviewed for plain error." *State v. Smith*, No. E2023-01416-CCA-R3-CD, 2024 WL 4554632, at *3 (Tenn. Crim. App. Oct. 22, 2024), *no perm. app. filed*. Thus, the nature of the issues presented by Defendant for review does not weigh in favor of waiver in the interest of justice.

Thus, we conclude that the interest of justice does not support waiver of the timely filing of the notice of appeal in this case. Defendant's untimely notice of appeal is dismissed.

**CONCLUSION**

After a thorough review of the record and applicable authorities, we conclude that Defendant's notice of appeal was not timely filed. Defendant's appeal is dismissed.

S/*Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE